versus the Royal Bank of Scotland. Thank you. Good morning. Good morning. May it please the Court. Eric Citron for the Plaintiffs. I think there are serious procedural and substantive issues with the District Court's disposition of this case below. I'm going to start with the procedural issues, because I think they're more straightforward. The purpose of the Article 3 inquiry generally, and the standing inquiry in particular, is not to decide whether the plaintiffs have a good case or a bad case, but to decide whether, if the plaintiffs have a good case, it's the kind of case the Court has the power to decide. And there's a really  important reason why, or I should say, and for that reason there's a pretty straightforward procedure that applies to these cases. The Court most recently articulated it in a case called, I think, Dubuisson, though I might be mispronouncing it. And it said that the Court must, quote, accept all the allegations in the plaintiff's complaint as true and assume that they will prevail on the merits. And what you're trying to figure out is, assuming that you have the kind of claim that could prevail on the merits, will we be able to understand why we're answering that question? And it's not just to protect the plaintiff's right to go to court. It's also to protect the defendants, right? Because if what we have is a bad claim, a claim that is the kind of claim a court ought to be allowed to decide, but we just don't have the goods, then the Court should be entering a merits disposition against us and not all of a sudden determining that it lacks standing. If the approach to Article 3 articulated below is correct, it will turn the court system essentially upside down. If you go to the jury, all the way to a jury trial, on the question whether — and the defendant says, you didn't prove damages, and the jury finds, you're right, you didn't prove damages, on the defendant and the district court's theory of standing, the Court should then dismiss the case for lack of standing rather than actually find that that case was adjudicated against the plaintiff. And the plaintiff could go back to a different court and try it in front of a different jury, I suppose. Breyer. What you're suggesting is that there's a difference between the argument that the plaintiffs don't have damages and the argument that the defendants, assuming arguendo that they did have damages, it wouldn't be the kind of damages that a court is permitted to recompense. Gershengorn That's exactly right. There are cases in which we can assume that the plaintiffs can prove up their case. They can prove whatever it is they say they have as damages, and the court could still find, okay, that's not the kind of injury that counts as injury for purposes of Article III standing. That's — and remember, almost every case, and in fact, every case that I could find that presents this kind of issue, does not involve a claim for economic damages. It involves a claim for an injunction, right? I want them to stop polluting this river. I want them to stop violating this administrative rule. And the injury asserted is collateral to the entitlement asserted for relief. Kennedy If a business school professor brought a lawsuit making the same substantive allegations that you do about what the defendants were doing that is illegal, and said, I want them stopped, and the reason is because it just turns my stomach to see people doing illegal things like this, and maybe they should even compensate me for my feeling ill every morning. That would be the sort of thing where the plaintiff did not have  Gershengorn Correct. Kennedy But you're in it for the money. Gershengorn Oh, yeah. Kennedy Yeah. Gershengorn We think we lost money, and we'd like it back. And, you know, I don't really think that there are almost any cases that involve a court saying that kind of claim is not a claim that a Federal court can adjudicate. We'll have — there might be also jurisdictional issues that are non-standing issues, which I think is the root of some of the confusion, right? Sometimes I have a claim for damages, but Congress has withdrawn the jurisdiction of the court over certain kinds of claims. Like this is the anthrax cleanup case. Kennedy Well, part of the problem is Rule 12b-1 covers cases, for example, where the argument is there is no diversity of citizenship, and plaintiffs allege there's diversity of citizenship, but it's factually not true. And then the court is authorized to make fact findings, right, to inquire into that at a preliminary stage and determine its jurisdiction. So one of the questions that I had is, is there ever, in your view, a case in which a standing issue would present the same sort of thing? In other words, it seems to me that what the defendants are saying here is that because they think you could decide that issue up front as a factual challenge — I mean, assume that instead of doing what they did, because I know you want to say that what they did amounts to a facial challenge — assume that they had actually put in affidavits from people saying, no, the plaintiffs are just wrong. These things don't have anything to do with LIBOR. These instruments were not priced that way or didn't — or use, in fact, some other issue. Would that be something that the court could consider the factual merits of at this stage? I think the answer to that question is no. The Court's cases have not — this Court's case has not been very clear articulating the distinction, but I think the relevant way to think about it is not actually whether it's a facial challenge or a factual challenge as such, but what that usually tracks to is whether the issue of jurisdiction is collateral to the merits or exactly the same as the merits question. And when you have a question like causation, and causation is a part of proving damages, like in a tort case, you cannot go assuming that the plaintiff can't prove causation for purposes of establishing jurisdiction, because there will never be a way for a federal court to adjudicate a tort case, right? At some point, someone has to decide — Was there anything wrong with the Court's reliance on Layton in saying that this is something that we've already determined as a matter of fact, and you can't allege things that are, you know, false as a matter of economics? Yeah, I'd say there are at least two problems with relying on Layton. One is that Layton is just wrong, and I would like to talk about the substance if we can, because Layton just refuses to credit a declaration that says everybody in this industry prices this instrument by reference to LIBOR. And, you know, I don't know why the District Court felt free at the 12B6 stage to disregard that allegation as well, but that's what it did. And the second is Layton is a 12B6 case, not a 12B1 case, and the standard is not identical. So you would not apply the same standard that was applied by the District Court in Layton to this question. But I do think that would be a somewhat pyrrhic ground for us to prevail on. I don't think Layton was correctly decided at the 12B6 stage either, and the only reason we haven't appealed that yet and prevailed, frankly, is that we're not allowed to because that case is not yet concluded. But, you know, like I said, we have allegations that LIBOR is directly affects the price of YenFX forwards. We have the defendants being found in a CFTC settlement to have traded. Well, the forwards, can I ask about the swaps and swaptions? It's not clear. The forwards, I think I know your argument, but for the swaps and swaptions, you discuss kind of artificial prices. The allegations are a little bit vaguer. Can you explain what the injury there is? Yeah, sure. So for swaps and swaptions, LIBOR, Yen LIBOR is an actual part of the determinant of the contract. Like there is a Yen LIBOR term in both the swap and the swaption. And as a result, the value of that instrument is immediately affected by what is true of Yen LIBOR on any given day. It could be higher or lower. And don't you have to say that, you know, you overpaid or the price was, you know, above what it should have been? Yeah, yes. And that is what we think happened. We think we overpaid or underpaid. We either overpaid or were undercompensated for the swap or the swaption at any given time. To the extent that there's any ambiguity in the allegations, the rule in the court is really clear that the general allegation includes the specific allegation for purposes of the court should credit, you know, should be willing to accept that we, when we say we were injured, that we got less money or we paid too much money for those instruments that we mean that we either underpaid or were overpaid. But if we had to make that kind of infinitesimal modification of the complaint, we easily could. I'd like to ask you about the CME report, which you rely on a formula from that report. And the appellees say that the report makes no mention of Yen LIBOR. So how does that work? They are absolutely right that it does not mention Yen LIBOR. How could you rely on it? It states the relevant math more generically and establishes that Yen LIBOR would be in the formula for a Yen instrument, a fortiori. It's just as though we pled in the complaint that the area of a rectangle is its length times its height and failed to plead that if you wanted to get it in square centimeters, you should do the length in square centimeters and the height in square centimeters. Yeah. It might be helpful, though, for those of us who are not math whizzes or, you know, people who did not make our money in life making money off money, if you spelled some of that out, because the way I let me let me state what I think you're saying and tell me if I'm wrong, because I had to make this up myself out of the background materials. The formula that is stated in the CME report uses a term X, the R of term X, as one of the factors, and that refers to an interest rate. Yeah, R term and R base. We're looking at page 136 of the joint appendix in case. Yeah. And so that that refers to an interest rate. And then the whole is out of his professor whole or Mr. Hall textbook or treatise talks about how derivatives traders regard regard LIBOR rates as a better indication of the true risk free rate than Treasury rates, blah, blah, blah, for various reasons. And therefore, the term risk free rate in this book should be interpreted as the LIBOR rate. And then a few pages later, his way of treating the formulas as we define are sub something as the value of the foreign risk free investment rate when money is invested for time T and the risk free investment rate is LIBOR. Yes. So as I read it, what when you look past the specific allegations of the complaint to the supporting materials that are cited, complaints with footnotes are not common in criminal lawyers business. And so it's interesting to keep tracking back to the source material. But it quite clearly says this is all done with LIBOR. Correct. Do I have to understand right where I would look to find the allegation that LIBOR is, in fact, at the heart of the forward foreign exchange forwards with the caveat that I am also not a finance guy, despite this being my fourth IBOR case in this court. And I that is exactly correct. That is the exact correct description of our argument. The the our term, our term in this formula would be filled with LIBOR. With LIBOR. Yes, exactly. And in fact, we submitted a declaration from one of the plaintiffs chief investment officers that says the industry standard formula for pricing these instruments would be to use yen LIBOR in this exact equation. And speaking of various IBOR cases, am I right that the TIBOR business is just out of this case now? Yes, it's it's totally settled. I think the the form of the motion. I like the word TIBOR because it reminds me of a Hungarian guy I knew in college. But apparently it's like LIBOR, it's TIBOR. Is that like the river in Rome? Sort of. I don't actually know how any of these are pronounced, but because LIBOR is said LIBOR, I think they rhyme. But yes, all the TIBOR, all the TIBOR specific defendants have settled and they're out of the case. Our allegations in the complaint include manipulation of euro, yen, TIBOR. There will be a question about whether our plaintiffs can represent people who have euro, yen, TIBOR transactions against the defendants who have not settled. That is a class certification issue and not a question. We've reserved three minutes for rebuttal. OK, we'll hear from the appellee. May it please the court, David Lesser from WilmerHale. Sorry, David Lesser from WilmerHale representing RBS and arguing for the remaining bank defendants. I'd like to start talking about the instruments where you just finished and explain why the CME article that you've been discussing makes very clear that our term and our base inputs to the formula are not LIBOR and cannot be LIBOR. In any event, they certainly are not LIBOR in every instance. And plaintiff's theory in this case, similar to Harry v. Total Gas, is that their FX forwards were affected because every FX forward is priced to yen LIBOR. So if you look at JA2500, which is the CME article, and it has the formula that's cited in the complaint, it says what the our term and our base inputs are. It says our term is the short-term rate at which one may effectively borrow the term currency. And our base represents the short-term rate that may be earned by investing the base currency. That's not LIBOR. That's the rate at which the party to the contract or someone evaluating the value of the contract is inputting their own borrowing and lending rates available to them. And it goes on to explain that one can calculate the appropriate forward price or the fair value and compare it to prevailing forward prices. If every FX forward was priced using benchmarks, there would be no comparison possible. Everyone would just be pricing it the same way because the other inputs, the spot rate, and the number of days are fixed at a certain time of day. And then it says another way of analyzing the situation is to calculate the implicit terms or base interest rate and compare it to prevailing rates. Well, what they're saying is you can solve for our base or our term, and they show the formula there and calculate it. If that was LIBOR, there would be nothing to calculate. LIBOR is published once a day. So we just be plugged in. It would be a fixed term. The way this formula works is that two parties contemplating entering into a forward contract can compare the value to them based on their own borrowing and lending costs available to them. And when they see a difference, they see a risk-free arbitrage opportunity. If LIBOR is used by everyone as the input, the formula doesn't work and the contract has no utility. Aren't these issues for discovery, though, that the experts and testimony and documents are used to work through? No, Judge Park. First of all, there were documents before the district court. Defendants submitted the CME article and plaintiffs submitted two fact declarations, as they've said, from their clients and a lawyer's declaration with 38 fact exhibits. If there were facts that they wanted to present, for example, to show that their FX forwards were priced in LIBOR, they had those facts. But you didn't present any factual showings. You challenged essentially using only the materials that are in the complaint. Well, we challenged using the complaint and the CME article, which was not an exhibit, to the complaint. That's incorporated by reference, isn't it? It is. Where is this referred to? It's cited. This is a very technical point, I can acknowledge. But under Rule 10, it's only at exhibits. I'm not saying you weren't entitled. I thought you were entitled to. We are. We are. And to do that in a 12b-6 or a 12b-1 facial, if you want to use that term, challenge. So I'm not understanding why this is a matter on which a district judge makes a fact finding based on very preliminary matter on a challenge to the face of the complaint rather than something that should be addressed. I mean, I don't understand how these foreign exchange transactions work. I must admit what I thought when I read the complaint was something akin to what you said about specific deals between two people or two institutions or whatever. One betting that the currency is going to go up in value against the dollar or some other currency, and the other betting that it's going to go down. But it started to sound in reading the plaintiff's materials that some, at least, of these are kind of things you could buy in the market that a bank offers. I don't know what's true and what's not true. I don't know why I should have to decide or why I'm entitled to decide what's true and what's not true when the plaintiffs clearly allege that certain things are true as factual matters. And they've even got a guy who comes in and says they're right. And whether that person is totally incompetent, I don't know. But that would be determined in some sort of Daubert hearing at some later stage of the case, I would think, in the normal course. Your Honor, I take your point. I'd prefer not to dwell on whether it was a facial or a factual challenge. I believe it was a factual challenge because we submitted the CME article. Plaintiffs referred to a factual dispute in their opposition to our motion to dismiss and on appeal, and they submitted declarations of their own. Ultimately, I don't think it matters whether we treat this as a factual or facial dispute. Obviously, if the judge resolved a factual dispute, it would be subject to clear error review. Right. But the question is whether the judge is entitled to resolve a factual dispute about the plaintiff's damages case. He absolutely was because jurisdictional facts were placed in dispute. Both sides agree on that. Why do you say it's a jurisdictional fact? I mean, it's one thing if somebody comes in and says, you know, I just don't like the fact that polar bears are dying, and so I want to challenge what Exxon is doing in the Arctic. And the issue is, well, you don't have any standing to do that because you're not really injured in a way that the courts are going to look at. That's a very, you know, we're not inquiring into whether, in fact, the guy is lying when he says he cares about polar bears. It's a question of whether that's the kind of injury that courts can give, have jurisdiction to consider. Here, they're alleging something, whether they're correct or not, that is absolutely the kind of injury that Federal courts are empowered to cope with. Right? They are alleging the type of injury, an economic injury, that a court can cope with. But even on a facial challenge, a court doesn't accept and give plaintiffs the benefit of inferences where there are more specific allegations that contradict them or exhibits or the like. Well, that contradict them, maybe. But that's still something very different than making a factual determination. What I'm concerned about is, aren't you advancing a proposition that effectively would allow any defendant who challenges the ultimate damages case that the plaintiffs are going to present as a factual matter to jump that to the head of the line and make it a standing challenge? I don't think so. I think it's going to be a rare case. But it's not an exceptional case. This is exactly the issue that was addressed in John v. Whole Foods, in Amidax, and in Harry v. Total Gas. Now, the plaintiffs in John v. Whole Foods, for example, said they must have been overcharged when they bought, I think, cheese and cupcakes at Whole Foods. And they based the allegation on analysis that showed that something like 90 percent of the goods were overcharged and the frequency of their own purchases and said, and Judge Engelmeyer held that that wasn't enough for standing. This Court reversed because it was affirmatively and plausibly alleged that the plaintiff was injured. In Harry, it was a similar situation. The question was whether injury manipulation at one hub affected all of the other hubs such that purchasers at other hubs would have been affected. And the Court said it was within the realm of possibility that every hub was affected. Both cases involved economic injury. What I'm saying is that in this case, it is not affirmatively and plausibly alleged that these instruments were affected by Yen-Lai Bor, and it's not within the realm of possibility that every FX forward was affected by Yen-Lai Bor. As to the swaps and swaptions, there is no allegation. District Court didn't say plausibly. The district court said definitively. Doesn't that suggest that it used the wrong standard? I think what the district court was getting at when it used the term definitively was plaintiff's allegation that it's well established that FX forwards are always priced to Yen-Lai Bor. So he was saying that's not definitive. In other words, not every – they haven't shown that every FX forward is priced to Yen-Lai Bor, just as in Harry. You know, the question was whether the plaintiffs had shown that every – it's possible that manipulation at one hub would affect every other hub. It's possible to interpret his use of that term differently, but ultimately I think that's a legal issue that's subject to no review. Thank you. Your time has expired. Thank you. You have three minutes for rebuttal, I believe. Counsel? Just two quick things. I think it is the case that these are exactly the kind of issues that need to be worked out – sorry. I think it is the case that these are exactly the kind of issues that have to be worked out through discovery, document production, and the like. I will say we have a witness who is willing to say that when they evaluated these transactions, they did so based on an industry standard formula that is pegged to Yen-Lai Bor. That is just the kind of thing that we would test with the ordinary methods of fact discovery and development. And then I will also point out – That all sounds very plausible to me, but the – and maybe this is just a problem with the – for the class action stage or something else, but it seems to me that part of the problem here is that in formulating this in a very abstract, class-based way, you actually don't seem to have somebody saying, I did this and I suffered that. In other words, as we were talking before about what the effect is of rigging Yen-Lai Bor, as I've always understood this alleged conspiracy, the idea was that banks would submit figures based on what was helpful to them at that day. So sometimes it would go up and sometimes it would go down, and they would be doing things to – based on whether they had some things coming up for an interest calculation that day or something like that. And that means that, as the defendants point out, as to one situation, someone in your class might well have been helped by this. And that gives me some pause because now I'm not sure whether you've got anybody who's saying this actually happened to me in a way that disadvantaged me. And when we talk about the swaps, I think one of the things that concerns me is you've got an instrument that, unlike the foreign exchange forwards, is specifically pegged to Lai Bor. That sounds great. Then they come back and say, but you don't allege that any of these things ever came to fruition in such a way that you could calculate at the end of the day whether somebody did better or worse as a result of the Lai Bor transactions. So I'm having a little trouble getting my head around who is an actual exemplar plaintiff who's standing for this class who's got something that you do allege, let alone that they can allege, is affecting them. Am I making sense? Do you understand what I'm asking about? Absolutely. I want to answer the question in a few different ways by direct reference to the complaint. First, I'd encourage you to look at pages 465 to 475 of the joint appendix. One of those transactions is the disputed March 3rd transaction, where I think we have a difference of opinion about which direction the manipulation would have benefited. The rest are very unambiguous allegations that we took this position on this day, that the CFTC's settlement documents in fact demonstrate manipulation on that day, and that that manipulation would have favored the bank's position and harmed our position. And those are actually extraordinarily precise and detailed allegations for purposes of making a complaint. You're not required to plead it that way. That's what John says. And those transactions are swap-type transactions. Some of them are swaps and some of them are for exchange forwards. And so there's that in the complaint. There's also, I think, and this is really important, there's the suggestion that both sides have to evaluate the deal and they don't evaluate it by reference to LIBOR, and we are somehow pleading that everybody always evaluates it by reference to LIBOR, and that can't possibly be true. I'll just say that the CFTC found that Mr. Lesser's clients do evaluate these particular derivatives based on yen LIBOR. And there's even one person at Rabobank acknowledging, I understood the parties taking opposite trading positions could be negatively affected, and I knew some of these parties that could be affected were American financial institutions when I made these submissions designed to favor the bank's trading positions. So we're just the other side of those transactions. The banks acknowledge that when they make these transactions, they are made by reference to and incorporating in the math yen LIBOR, and they know that if they nudge them in favor of the bank, they're nudging them against the person on the other side of those transactions. That's us, and we would like our money back. Thank you. Thank you both. We'll reserve decision.